**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ROGELIO MOLINA, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,*

Plaintiff,

v.

STOUT NYC HOSPITALITY GROUP INC.
f/k/a WHELAN BROTHERS MANAGEMENT GROUP, INC.,
AMITY STREET, INC.
d/b/a AMITY HALL DOWNTOWN,
AMITY HALL UPTOWN INC.
d/b/a AMITY HALL UPTOWN,
STOUT INC.
d/b/a FEILE
d/b/a STOUT NYC PENN STATION,
MAGGIE'S PLACE, INC.
d/b/a MAGGIE'S PLACE,
RIVERCREST INC.
d/b/a RIVERCREST,
STOUT II, INC.
d/b/a STOUT NYC FINANCIAL DISTRICT,
STOUT III INC.
d/b/a STOUT NYC GRAND CENTRAL,
STOUT BRYANT PARK, INC.
d/b/a STOUT NYC BRYANT PARK,
STOUT MARKETS, INC.
d/b/a STOUT NYC LODGE BAR,
HALF PINT ON THOMPSON, LLC
d/b/a ERNIE'S BAR
d/b/a THE HALF PINT,
THE INDEPENDENT NYC, INC.
d/b/a THE INDEPENDENT,
THE LONG ROOM INC.

Case No:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

d/b/a THE LONG ROOM,
THE WOLFE ON AMSTERDAM INC.
d/b/a THE WOLFE, and
MARTIN P. WHELAN,

Defendants.

---

Plaintiff, ROGELIO MOLINA ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, STOUT NYC HOSPITALITY GROUP INC. f/k/a WHELAN BROTHERS MANAGEMENT GROUP, INC. ("Stout Hospitality"), AMITY STREET, INC. d/b/a AMITY HALL DOWNTOWN, AMITY HALL UPTOWN INC. d/b/a AMITY HALL UPTOWN, STOUT INC. d/b/a FEILE, d/b/a STOUT NYC PENN STATION, MAGGIE'S PLACE, INC. d/b/a MAGGIE'S PLACE, RIVERCREST INC. d/b/a RIVERCREST, STOUT II, INC. d/b/a STOUT NYC FINANCIAL DISTRICT, STOUT III INC. d/b/a STOUT NYC GRAND CENTRAL, STOUT BRYANT PARK, INC. d/b/a STOUT NYC BRYANT PARK, STOUT MARKETS, INC. d/b/a STOUT NYC LODGE BAR, HALF PINT ON THOMPSON, LLC d/b/a ERNIE'S BAR, d/b/a THE HALF PINT, THE INDEPENDENT NYC, INC. d/b/a THE INDEPENDENT, THE LONG ROOM INC. d/b/a THE LONG ROOM, THE WOLFE ON AMSTERDAM INC. d/b/a THE WOLFE (collectively, the "Corporate Defendants"), and MARTIN P. WHELAN (the "Individual Defendant" and together with the Corporate Defendants, the "Defendants") and states as follows:

## **INTRODUCTION**

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid overtime wages, due to improper overtime calculations; (2) unpaid overtime wages, due to failure to aggregate all hours worked at multiple locations; (3) unpaid

wages, including overtime, due to an invalid tip credit; (4) unpaid wages, due to time-shaving; (5) illegally retained gratuities; (6) liquidated damages; and (7) attorneys' fees and costs.

2. Plaintiff alleges that, pursuant to the New York Labor Law ("NYLL"), he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid overtime wages, due to improper overtime calculations; (2) unpaid overtime wages, due to failure to aggregate all hours worked at multiple locations; (3) unpaid wages, including overtime, due to an invalid tip credit; (4) unpaid wages, due to time-shaving; (5) illegally retained gratuities; (6) unpaid spread of hours premiums; (7) costs incurred in purchasing and maintaining uniforms; (8) liquidated damages; and (9) attorneys' fees and costs.

3. Plaintiff further alleges, on an individual basis, that Defendants violated New York City's Earned Safe and Sick Time Act (the "ESSTA"), N.Y.C. Admin. Code §§ 20-911, *et seq.*, when they terminated Plaintiff in retaliation for exercising his right to use sick time, in violation of § 20-918 of the ESSTA.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5. Venue is proper in the Southern District pursuant to 28 U.S.C. §1391, because the events giving rise to this Complaint took place in this District. The circumstances giving rise to this action occurred in whole or in part in the county in which this Court sits. Throughout his employment, Plaintiff worked for Defendants in Manhattan.

## PARTIES

*Plaintiff:*

6. Plaintiff, for all relevant time periods, is and was a resident of Queens County, New York.

*Corporate Defendants:*

7. Corporate Defendant STOUT NYC HOSPITALITY GROUP INC. (f/k/a WHELAN BROTHERS MANAGEMENT GROUP, INC. prior to March 22, 2021), with and through its subsidiaries (all other Corporate Defendants), collectively owns and operates sixteen (16) restaurants in the New York City Metropolitan Area[1] as a single integrated enterprise, under the ownership and management of Individual Defendant MARTIN P. WHELAN. These restaurants operate under the various trade names at the following addresses:

| No. | Name | Address |
|---|---|---|
| 1. | Amity Hall Uptown | 982 Amsterdam Ave, New York, NY 10025 |
| 2. | Amity Hall Downtown | 80 W 3rd St, New York, NY 10012 |
| 3. | The Half Pint | 234 Thompson St, New York, NY 10012 |
| 4. | Ernie's Bar | 76 W 3rd St, New York, NY 10012 |
| 5. | Stout NYC Penn Station | 133 W 33rd St, New York, NY 10001 |
| 6. | Stout NYC Financial District | 90 John St, New York, NY 10038 |
| 7. | Stout NYC Grand Central | 60 E 41st St, New York, NY 10017 |
| 8. | Stout NYC Bryant Park | 109 W 39th St, New York, NY 10018 |
| 9. | Stout NYC Lodge Bar | Bryant Park's Winter Village, New York, NY 10018 |
| 10. | The Independent | 147 W 40th St, New York, NY 10018 |
| 11. | The Splendid | 16 E 52nd St., New York, NY 10022 |
| 12. | The Long Room | 120 W 44th St, New York, NY 10036 |
| 13. | The Wolfe | 425 Amsterdam Ave, New York, NY 10024 |

[1] While Defendants also own and operate three (3) restaurants in New Jersey, those establishments are subject to different wage and hour laws and are therefore not included herein.

| | | |
|---|---|---|
| 14. | Feile | 131 W 33rd St, New York, NY 10001 |
| 15. | Maggie’s Place | 21 E 47th St, New York, NY 10017 |
| 16. | Rivercrest | 33-15 Ditmars Blvd, East Elmhurst, NY 11370 |

(together, the “Restaurants”).

8. Each Restaurant is owned and operated by Individual Defendant and Corporate Defendant Stout Hospitality, a domestic business corporation organized under the laws of the State of New York, with its principal place of business and address for service of process located at 786 Walt Whitman Rd, Melville, NY 11747.

9. Each Restaurant is assigned a corporate entity to serve as its nominal owner and operator:

- Corporate Defendant AMITY STREET, INC. (d/b/a Amity Hall Downtown), is a domestic business corporation organized under the laws of the State of New York with a principal place of business at 80 W 3rd St, New York, NY 10012, and an address for service of process at 786 Walt Whitman Rd, Melville, NY 11747.

- Corporate Defendant AMITY HALL UPTOWN INC. (d/b/a Amity Hall Uptown) is a domestic business corporation organized under the laws of the State of New York with a principal place of business at 982 Amsterdam Ave, New York, NY 10025 and an address for service of process at 786 Walt Whitman Rd, Melville, NY 11747.

- Corporate Defendant STOUT INC. (d/b/a Feile and Stout NYC Penn Station) is a domestic business corporation organized under the laws of the State of New York with a principal place of business and service of process address both located at 133 West 33rd Street, New York, NY 10001.

- Corporate Defendant MAGGIE'S PLACE, INC. (d/b/a Maggie’s Place) is a domestic business corporation organized under the laws of the State of New York with a principal place of business and service of process address both located at 21 E 47th Street, New York, NY 10017.

- Corporate Defendant RIVERCREST INC. (d/b/a Rivercrest) is a domestic business corporation organized under the laws of the State of New York with a principal place of business at 33-15 Ditmars Boulevard, Astoria, NY 11105, and an address for service of process at 786 Walt Whitman Rd, Melville, NY 11747.

- Corporate Defendant STOUT II, INC. (d/b/a Stout NYC Financial District) is a domestic business corporation organized under the laws of the State of New York with a principal place of business at 90 John Street, New York, NY 10038, and an address for service of process at 786 Walt Whitman Rd, Melville, NY 11747.

- Corporate Defendant STOUT III INC. (d/b/a Stout NYC Grand Central) is a domestic business corporation organized under the laws of the State of New York with a principal place of business and service of process address both located at 60 E 41st Street, New York, NY 10017.

- Corporate Defendant STOUT BRYANT PARK, INC. (d/b/a Stout NYC Bryant Park) is a domestic business corporation organized under the laws of the State of New York with a principal place of business at 109 W 39th Street, New York, NY 10018, and an address for service of process at 786 Walt Whitman Rd, Melville, NY 11747.

- Corporate Defendant STOUT MARKETS, INC. (d/b/a Stout NYC Lodge Bar) is a domestic business corporation organized under the laws of the State of New York with a principal place of business at 42 W 42nd Street, New York, NY 10018, and an address for service of process at 786 Walt Whitman Rd, Melville, NY 11747.

- Corporate Defendant HALF PINT ON THOMPSON, LLC (d/b/a Ernie's Bar and The Half Pint) is a domestic limited liability company organized under the laws of the State of New York with a principal place of business at 234 Thompson St a/k/a 76 W 3rd St, New York, NY 10012, and an address for service of process at 786 Walt Whitman Rd, Melville, NY 11747.

- Corporate Defendant THE INDEPENDENT NYC, INC. (d/b/a The Independent) is a domestic business corporation organized under the laws of the State of New York with a principal place of business at 147 W 40th St, New York, NY 10018, and an address for service of process at 786 Walt Whitman Rd, Melville, NY 11747.

- Corporate Defendant THE LONG ROOM INC. (d/b/a The Long Room) is a domestic business corporation organized under the laws of the State of New York with a principal place of business at 120 W 44th St, New York, NY 10036, and an address for service of process at 234 Thompson Street, New York, NY 10012.

- Corporate Defendant THE WOLFE ON AMSTERDAM INC. (d/b/a The Wolfe) is a domestic business corporation organized under the laws of the State of New York with a principal place of business at 425 Amsterdam Avenue, New York, NY 10024, and an address for service of process at 21-45 44th Drive, Apt PHE, Long Island City, NY 11101.

*Individual Defendant:*

10. Individual Defendant MARTIN P. WHELAN is an Owner, President and Operator of all Corporate Defendants. Individual Defendant MARTIN P. WHELAN is also the Chief Executive Officer of all Corporate Defendants. *See* **Exhibit A**.

11. At all relevant times, Individual Defendant MARTIN P. WHELAN exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs, and Class Members.

12. At all relevant times, Individual Defendant MARTIN P. WHELAN had and exercised the power and authority to (i) employ and terminate employees and managers, (ii) determine their hourly rates or salaries, frequency of payments, and means of payments, (iii) establish, alter, or otherwise affect their work schedules, (iv) otherwise directly or indirectly affect the qualities of their employments, and (v) directly or indirectly maintain their employment records.

13. At all relevant times, Individual Defendant MARTIN P. WHELAN, in his capacity as President of all Corporate Defendants, frequently visited each of the Restaurants to (i) inspect the operations and quality of food, service, and hygiene of the Restaurants, (ii) meet and confer with the Restaurants' General Managers and other managers to discuss operations, sales, and overall status of the Restaurants and their employees, (iii) pick up or drop off supplies, ingredients, or paperwork, (iv) personally supervise employees (including Plaintiff, FLSA Collective Plaintiffs, and Class Members) and managers and monitor their individual performances of duties and behaviors, and (v) directly or indirectly reprimand any employees (including Plaintiff, FLSA Collective Plaintiffs, and Class Members) or managers who did not perform their duties sufficiently or correctly, or displayed inappropriate behavior.

14. At all relevant times, Plaintiff, FLSA Collective Plaintiffs, and Class Members could each complain to Individual Defendant MARTIN P. WHELAN (via direct contact during his visits to their relevant Restaurants) directly regarding any of the terms of their employments, and Individual Defendant MARTIN P. WHELAN would have the authority to directly affect any changes to the quality and terms of their employments.

15. At all relevant times, Individual Defendant MARTIN P. WHELAN exercised functional control over the business and financial operations of all Corporate Defendants.

16. Individual Defendant MARTIN P. WHELAN was not at every Restaurant continuously but instead frequently made trips to the different Restaurants to deliberate with managers and supervise employees.

17. Individual Defendant MARTIN P. WHELAN would confer with managers and supervisors of each Restaurant to discuss things like revenues and employee scheduling, but he would also ask workers such as Plaintiff, FLSA Collective Plaintiffs, and Class Members how things were going and whether there were any issues he should be concerned about.

18. At all relevant times, Individual Defendant MARTIN P. WHELAN's role and decisions made in connection to his role directly affected the nature, conditions, and circumstances of Plaintiff's, FLSA Collective Plaintiffs', and Class Members' employments.

*Single Integrated Enterprise Allegations:*

19. While each Restaurant is assigned a corporate entity, in reality, all the Restaurants operate as a single integrated enterprise, with the Individual Defendant and Corporate Defendant Stout Hospitality as joint employers. Specifically, the Restaurants are engaged in related activities, share common ownership and have a common business purpose:

- The Restaurants are commonly owned through the common control of Individual Defendant who holds an executive position in all the entities and has the power to make binding decisions for the entities.

- The Restaurants share the same human resources and payroll department. Stout Hospitality operates one (1) career portal for all of Defendants' locations. The career portal lists identical job descriptions for multiple different Restaurants. *See* **Exhibit B**, snapshot of Stout NYC Hospitality Group's "Careers" page, available at: http://harri.com/stout-nyc-hospitality-group.

- Stout Hospitality's administration of a single integrated enterprise across sixteen (16) active NYC locations is confirmed by Plaintiff's own employment experiences. For every week he worked, Plaintiff was required by Defendants to work shifts at both Amity Hall Uptown and The Long Room.

- Stout Hospitality's website lists all sixteen (16) active NYC locations. The website contains the following information:

  (i) "STOUT NYC HOSPITALITY GROUP consists of 16 owner-operated bars/restaurants throughout New York City." The website lists out all sixteen (16) active locations in New York City. *See* **Exhibit C**, snapshot of Stout NYC Hospitality Group's "location" page, available at: https://www.stoutnychospitalitygroup.com/

  (ii) All sixteen (16) locations participate in the same events advertised by Stout Hospitality. For instance, Stout Hospitality has launched their Give a Pint, Get a Pint event to provide customers with free drinks "at any of our locations". *See* **Exhibit D**, snapshot of Stout NYC Hospitality Group's "Give a Pint, Get a Pint" page, available at: https://www.stoutnychospitalitygroup.com/pint-for-a-pint.

- Stout Hospitality maintains a set of Facebook, TikTok, and Instagram accounts for all sixteen (16) locations, which it uses to market and advertise the Restaurants collectively. *See* **Exhibit E**.

- The Restaurants all serve similar menu items comprised of a combination of traditional and new American cuisine.

- The Restaurants share common ownership by Individual Defendant, as advertised on his LinkedIn profile. *See* **Exhibit F**, snapshot of Martin Whelan's LinkedIn Biography.

- The Restaurants share the same vendors. For example, Brendan Donohoe, CEO of Stout Hospitality, confirmed that the Restaurants all use the same online ordering platform. In addition, throughout January 2026, the Restaurants uniformly offered

non-alcoholic beverages from Athletic Brewing Co. and St. Agrestis. *See* **Exhibit G**.

- The New York State Liquor Authority provides a public online tool, the NYS Liquor Authority Mapping Project, to search liquor licenses and other various licenses of businesses in New York, at https://lamp.sla.ny.gov/. These records identify the principal of each business that has an active liquor license. The NYS Liquor Authority identifies Individual Defendant as a principal and liquor licensee for all Restaurants, thereby revealing a common management between the Restaurants by Individual Defendant. *See* **Exhibit H**.

- Pursuant to the New York State Liquor Authority Handbook for Retail Liquor Licensees, New York State liquor license holders must (1) prevent sales of liquor to minors, (2) prevent disorder, (3) confine service and consumption of liquor to the licensed area, (4) prevent sales of liquor to visibly intoxicated persons, (5) prohibit their businesses from offering unlimited drink specials, (6) ensure licensed restaurants have suitable kitchen facilities to prepare and serve a full menu whenever their business is open, (7) prevent individuals from appearing nude or partially nude on the licensed premises, (8) prevent the premixing of liquor, (9) prevent the refilling of liquor, (10) prevent possession of untaxed cigarettes & tobacco products, (11) prevent contamination of bottles, (12) maintain adequate books and records of all transactions involving the licensed business, (13) ensure proper identification of all beer taps, (14) ensure compliance with all stipulations and conditions of the liquor license agreement, (15) comply with all state and local laws and regulations governing the operations of the licensed business. *See* **Exhibit I**. Because Individual Defendant MARTIN WHELAN is the liquor licensee for the Restaurants, Individual Defendant MARTIN WHELAN is required by New York State law to personally ensure the Restaurants comply with the above 15 requirements.

- As the liquor licensee for the Restaurants, Individual Defendant is required by New York State law to (i) personally impose a common management and common control of labor relations upon the Restaurants, and (ii) comply with all state and local laws, including the New York Labor Law, New York State Human Rights Law, and the New York City Human Rights Law. Failure to do so would be in violation of the provisions of the New York State Alcoholic Beverage Control Law which could result in disciplinary action by the New York State Liquor Authority, including arrest or fines. *See* **Exhibit I**; *see also* Chapter 478 of the Laws of 1934.

20. Although Plaintiff only worked at two (2) locations, all Defendants are still appropriately named in the Complaint as Individual Defendant and Stout Hospitality are joint employers to all employees nominally working for subsidiaries, and are liable through the theory of a "single integrated enterprise." As demonstrated above, the Restaurants: (i) engage in related

activities; (ii) share common ownership and management by Individual Defendant MARTIN WHELAN, as revealed by his own social media pages and public licenses; (iii) have interrelated operations, as shown through the exchange of employees between Restaurants; and (iv) have centralized control of labor relations, as demonstrated by Defendants' shared career page for the hiring of all Restaurants.

21. At all relevant times, each Corporate Defendant has gross annual revenues in excess of $500,000.00.

22. At all relevant times, each Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and NYLL.

23. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ALLEGATIONS

24. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt front-of-house persons (including servers, bussers, bartenders, barbacks, food runners, hostesses, and delivery persons, among others) and back-of-house persons (including line cooks, prep cooks, and dishwashers, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

25. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, due to (1) improper overtime

calculations; (2) failure to aggregate all hours worked at multiple locations; (3) an invalid tip credit; (4) time-shaving; and (5) illegal tip retention. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

26. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendant.

## RULE 23 CLASS ALLEGATIONS

27. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt front-of-house persons (including servers, bussers, bartenders, barbacks, food runners, hostesses, and delivery persons, among others) and back-of-house persons (including line cooks, prep cooks, and dishwashers, among others) employed by Defendants on or after the date that is six years and 228 days (pursuant to NY's Executive Order tolling during the COVID pandemic) before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

28. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23. The Class also includes a subclass of employees, all of whom were non-exempt tipped front-of-house dining-service staff (including servers, bartenders, bussers, barbacks, and food

runners, among others) employed by Defendants (the "Tipped Subclass" or "Tipped Subclass Members"). Further, the Class includes another subclass of employees; all of whom were scheduled to work at multiple of Defendants' Restaurants and thus were subject to Defendants' improper issuance of multiple paychecks (the "Multi-Location Subclass" or "Multi-Location Subclass Members"). Plaintiff is a member of the Class, the Tipped Subclass, and the Multi-Location Subclass.

29. The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. Further, there is no doubt that there are more than forty (40) members of each Subclass.

30. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All Class Members were subjected to the same corporate practices by Defendants, as alleged herein, of Defendants' failure to (i) properly provide employees with spread of hours premiums for all shifts lasting over ten (10) hours, (ii) reimburse all costs incurred by employees in maintaining and purchasing uniforms, (iii) compensate employees for all hours worked, due to time-shaving, and (iv) provide employees with proper wage notices and wage statements. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures of Defendants.

31. Plaintiff and the Tipped Subclass suffered from Defendants' failure to pay minimum and overtime wages due to Defendants' invalid tip credit policy because Defendants: (i) failed to properly provide Plaintiff and Tipped Subclass Members with tip credit notices as required by NYLL § 195 at their dates of hiring and annually thereafter, (ii) deducted tip credits from Plaintiff's and Tipped Subclass Members' wages for weeks where the total amount of non-tip producing work they performed exceeded twenty (20%) percent of the total work they performed for that week, and (iii) improperly calculated Plaintiff's and Tipped Subclass Members' overtime rates. Furthermore, Plaintiff and the Tipped Subclass did not receive proper amounts of tips from the events they worked, because Defendants retained large sums of these tips for themselves.

32. The Multi-Location Subclass additionally suffered from Defendants' failure to aggregate all hours worked at multiple locations because Defendants compensated them on different checks associated with different Restaurants when they worked at multiple locations during the same pay period. By doing this, Defendants avoided paying overtime at a rate of 1.5 times their regular hourly rates for all hours worked over forty (40) in a workweek, in violation of the FLSA and the NYLL. Further, the Multi-Location Subclass suffered from Defendants' policy of time-shaving, in which Defendants required Multi-Location Subclass Members to clock out when leaving one Restaurant and clock back in upon arriving at the next, effectively deducting travel time from their compensable hours.

33. Plaintiff is able to fairly and adequately protect the interests of the Class and Subclasses and has no interests antagonistic to the Class or Subclasses. Additionally, Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, Tipped Subclass, and the Multi-Location Subclass.

34. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

35. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

36. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

37. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiff and Class Members within the meaning of the New York Labor Law;

b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

d) Whether Defendants properly notified Plaintiff and Class Members of their hourly rates and overtime rates;

e) Whether Defendants properly provided notice to Plaintiff and Tipped Subclass Members that Defendants were deducting tip credits from their wages;

f) Whether Defendants provided proper wage statements informing Plaintiff and Tipped Subclass Members of the amount of tip credits deducted from their wages for each payment period, their proper overtime rates of compensation, and other information Defendants were required to provide to them on their wage statements, as provided under the New York Labor Law;

g) Whether Defendants provided proper wage statements to Plaintiff and Class Members per requirements of the NYLL;

h) Whether Defendants provided proper wage and hour notices to Plaintiff and Class Members, at date of hiring and annually, per requirements of the New York Labor Law;

i) Whether Defendants required Plaintiff and Tipped Subclass Members to perform non-tipped work for more than 20% of their workweeks;

j) Whether Defendants reimbursed Plaintiff and Class Members for uniform maintenance expenses;

k) Whether Defendants illegally retained gratuities earned by Plaintiff and the Tipped Subclass;

l) Whether Defendants improperly calculated overtime wages owed to Plaintiff and Tipped Subclass Members;

m) Whether Defendants paid Plaintiff and Class Members their owed Spread of Hours Premiums as required by NYLL; and

n) Whether Defendants shorted Plaintiff and Multi-Location Subclass Members of their overtime wages by means of improperly issuing them multiple paychecks; and

o) Whether Defendants failed to compensate Plaintiff and Multi-Location Subclass Members for all hours worked, due to time-shaving of travel time between Restaurants.

## **STATEMENT OF FACTS**

*Plaintiff's Employment Background*

38. In April 2024, Plaintiff was hired by Defendants as a barback, busboy, and food runner at both Amity Hall Uptown (at 982 Amsterdam Avenue) and The Long Room (at 120 W 44th Street). Plaintiff's employment with Defendants ended in or around September 2024.

39. Plaintiff was scheduled by Defendants to work four (4) days per week. On Mondays and Tuesdays, Plaintiff was scheduled to work from 4:00 p.m. to 1:00 a.m., for nine (9) hours a day. On Saturdays and Sundays, Defendants scheduled Plaintiff to work at Amity Hall Uptown, from 9:00 a.m. to 5:00 p.m., and then at The Long Room, from 5:30 p.m. to 12:00 a.m. The Saturday and Sunday shifts at the two locations were back-to-back, with Plaintiff starting at The Long Room thirty (30) minutes after his shift at Amity Hall Uptown ended. In total, Plaintiff was scheduled to work around forty-seven (47) hours each week.

40. Throughout his employment, Plaintiff was also called in to work an additional day when Defendants' Restaurants were short-staffed, had a high volume of reservations, or were hosting a special event or party.

41. Plaintiff, FLSA Collective Plaintiffs, and Class Members had similar work schedules each week.

42. Throughout his employment, Plaintiff was paid by Defendants on a weekly basis at the New York State minimum tipped credit hourly rate ($10.65 in the year 2024), for all hours worked. Similarly, FLSA Collective Plaintiffs, and Tipped Subclass Members were all compensated at similar rates throughout their employment.

*Unpaid Overtime Wages*

43. At all relevant times, Plaintiff, FLSA Collective Plaintiffs, Tipped Subclass Members, and Multi-Location Subclass Members were subjected to Defendants' policy of not paying proper overtime wages, in violation of the FLSA and NYLL. Defendants failed to pay proper overtime wages in two ways: (1) by failing to aggregate all overtime hours worked, and (2) by improperly calculating Plaintiff's overtime rate.

44. Throughout Plaintiff's employment, Plaintiff worked at two (2) of Defendants' Restaurants, Amity Hall Uptown and The Long Room. On Saturdays and Sundays, Plaintiff worked the morning shift at Amity Hall Uptown and the evening shift at The Long Room.

45. Although Plaintiff worked at multiple locations within the same pay period, Defendants failed to aggregate his hours across those locations, as a result, Defendants did not properly compensate Plaintiff for all overtime hours worked. Instead, Defendants issued separate paychecks from each Restaurant and failed to pay Plaintiff the full overtime wages to which he was entitled.

46. FLSA Collective Plaintiffs and Multi-Location Subclass Members were similarly required to work at multiple Restaurants owned by Defendants during the same pay period and were not paid at overtime premium rates for all overtime hours worked, due to Defendants' failure to aggregate all hours worked at multiple locations.

47. Additionally, even when Defendants did pay Plaintiff overtime, Defendants incorrectly calculated his overtime rate. For example, for the period beginning 07/01/2024, Plaintiff was paid at a rate of $15.98 for his overtime hours. However, the correct tip credit overtime rate was $18.65. As a result, Plaintiff was significantly underpaid for all overtime hours. This is only one example of Defendants' improper calculation of Plaintiff's overtime rate, but this occurred throughout his employment. FLSA Collective Plaintiffs and Tipped Subclass Members were similarly paid at overtime rates that were calculated incorrectly.

48. Defendants knowingly and willfully operated their business with a policy of failing to pay overtime wages to Plaintiff, FLSA Collective Plaintiffs, Tipped Subclass Members, and Multi-Location Subclass Members, in violation of the FLSA and NYLL.

*Unpaid Wages Due to Time-Shaving*

49. At all relevant times, Defendants failed to compensate Plaintiff, FLSA Collective Plaintiffs, and Multi-Location Subclass Members for all hours worked, due to time-shaving.

50. As discussed in further detail above, on Saturdays and Sundays, Defendants required Plaintiff to work at multiple Restaurants in a single workday. However, Defendants maintained a policy and practice in which Plaintiff, FLSA Collective Plaintiffs, and Multi-Location Subclass Members were required to clock out when they left the first Restaurant of their workday and clock back in when they arrived at their next Restaurant. Defendants implemented this policy to deduct employees' travel time from their wages.

51. For Plaintiff, travelling between Amity Hall Uptown and The Long Room took approximately thirty (30) minutes. Given that Plaintiff traveled between those Restaurants twice weekly, he was systematically underpaid by approximately one (1) hour of overtime compensation each week. FLSA Collective Plaintiffs and Multi-Location Subclass Members were similarly deprived of compensation for travel time between the Restaurants.

52. The NYLL provides that "the minimum wage…shall include time spent in traveling to the extent that such traveling is part of the duties of the employee." 12 N.Y.C.R.R. § 142-2.1. The New York Department of Labor's interpretation of compensable travel time is identical to travel time standards under the FLSA. *See* N.Y. State. DOL Op. Ltr. No. RO-09-0190 (Aug. 10, 2010). Moreover, under the FLSA, "[t]ime spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked" (emphasis added). 29 CFR 785.38. Accordingly, Plaintiff, FLSA Collective Plaintiffs, and Multi-Location Subclass Members are owed unpaid wages for travel time between the Restaurants.

53. Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff, FLSA Collective Plaintiffs, and Multi-Location Subclass Members for travel time between Restaurants, in violation of the FLSA and NYLL.

*Tip Retention Claims*

54. At all relevant times, Defendants failed to pay all tips owed to Plaintiff, FLSA Collective Plaintiffs, and Tipped Subclass Members, in violation of the FLSA and NYLL.

55. Defendants frequently hosted private events and buyouts at the Restaurants. During these events, Defendants' clients left tips for the employees who provided them service. However, Plaintiff, FLSA Collective Plaintiffs, and Tipped Subclass Members did not receive proper

amounts of tips from the events they worked, because Defendants retained large sums of these tips for themselves. As a result, Plaintiff's, FLSA Collective Plaintiffs', and Tipped Subclass Members' wages were reduced further.

56. Defendants' private events generally cost thousands—or tens of thousands—of dollars. Despite this exorbitant pricing, which would surely yield large amounts of tips for Plaintiff due to the common technique of percentage-based tipping (commonly around 20%), Plaintiff's tips on his paycheck did not reflect said pricing. Likewise, FLSA Collective Plaintiffs' and Tipped Subclass Members' paychecks failed to accurately reflect the full amount of tips they should have received based on the revenues generated from these events.

57. Plaintiff's, FLSA Collective Plaintiffs', and Tipped Subclass Members' tips are covered under the meaning of § 196-d of the NYLL. In New York, "[n]o employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities and other surcharges or fees, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." NYLL § 196-d.

58. Further, Defendants failed to provide customers with an explicit written statement that all tips, surcharges, service fees, and gratuities left would be retained by Defendants. Defendants' failure to provide notice of their retention of tips from tipped employees was inadequate to satisfy the requirements of *Sarmiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008).

59. Even if customers were provided with a written statement indicating that surcharges, service fees, or similar charges were not tips, customers would nevertheless have reasonably understood such fees to constitute gratuities. It is an ordinary and customary practice for customers to leave tips for employees working private events. Yet, despite this common

practice and despite working dozens of such events, Plaintiff did not receive tips commensurate with the services provided or the amounts charged. Any such written disclaimer, if provided, was insufficient to meaningfully inform customers that these fees were not being distributed as additional compensation to employees.

60. Defendants knowingly and willfully operated their business with a policy of retaining Plaintiff's, FLSA Collective Plaintiffs', and Tipped Subclass Members' tips, in violation of the FLSA and the NYLL.

*Invalid Tip Credit Claims*

61. Throughout their employments, Plaintiff, FLSA Collective Plaintiffs and Tipped Subclass Members were subjected to Defendants' invalid tip credit policy, in violation of the FLSA and NYLL.

62. Throughout Plaintiff's, FLSA Collective Plaintiffs', and Tipped Subclass Members' employment, Defendants paid Plaintiff, FLSA Collective Plaintiffs, and Tipped Subclass Members at a tip credit minimum wage. However, Defendants were not entitled to deduct any tip credits from Plaintiff's, FLSA Collective Plaintiffs', and Tipped Subclass Members' wages under the FLSA and NYLL because Defendants: (i) failed to provide tip credit notice to Plaintiff, FLSA Collective Plaintiffs, and Tipped Subclass Members at their hirings, and/or inform them that a tip credit was being deducted, and (ii) deducted tip credits from Plaintiff's, FLSA Collective Plaintiffs' and Tipped Subclass Members' wages for all hours worked despite having caused them to engage in non-tipped duties for more than 20% of the work they performed each week.

63. As a direct result of Defendants' invalid tip credit policy, Plaintiff, FLSA Collective Plaintiffs, and Tipped Subclass Members were paid below the New York State minimum wage in violation of the NYLL. *See* 12 N.Y.C.R.R. § 146-1.2, *et seq.*

64. Throughout Plaintiff's employment, Defendants required Plaintiff to engage in non-tipped duties for a substantial part of his shift. On a daily basis, among other non-tipped duties, Plaintiff was required to: (i) clean the basement, (ii) assemble chairs when they broke, (iii) polish silverware and glassware, (iv) bring up all tables and chairs from the basement, (v) bring the tables and chairs back down to store in the basement again at the end of the shift, (vi) clean the sidewalks, (vii) collect and take out the garbage, (viii) clean out the fridge, and (ix) unload beer crates from the truck and store them in the basement. All of these tasks occupied up to four (4) hours of each shift Plaintiff worked. During double shifts on Saturdays and Sundays, such non-tipped work totaled as much as eight (8) hours.

65. Because Plaintiff regularly performed non-tipped side work in excess of 20% of his total shift, Defendants unlawfully deducted tip credits from his wages. Defendants were likewise not entitled to take a tip credit from the wages of FLSA Collective Plaintiffs and Tipped Subclass Members, as they required FLSA Collective Plaintiffs and Tipped Subclass Members to engage in similar non-tipped side work for similar amounts of time.

66. Further, Plaintiff, FLSA Collective Plaintiffs, and Tipped Subclass Members never received any written or verbal notice from Defendants that Defendants were claiming a tip credit on their weekly compensation. They were never told by Defendants that Defendants were deducting tip credits from their wages, nor did they ever receive proper notice by Defendants as to the amount of tip credit allowances Defendants deducted for each payment period during their employments.

67. Defendants knowingly and willfully maintained policies and practices of failing to pay Plaintiff, FLSA Collective Plaintiffs, and Tipped Subclass Members the applicable New York

State minimum wage and corresponding overtime compensation, in violation of the FLSA and the NYLL.

_Unpaid Spread of Hours Premiums_

68. At all relevant times, Defendants failed to provide Plaintiff and Class Members with spread of hours premiums for all workdays lasting over ten (10) hours, in violation of the NYLL.

69. Throughout his employment, Plaintiff regularly worked double shifts on Saturdays and Sundays—with a spread of fifteen (15) hours (9:00 a.m. – 12:00 a.m.). Class Members were similarly required by Defendants to work shifts with a spread of over ten (10) hours.

70. However, Defendants failed to pay Plaintiff and Class Members their owed spread of hours premiums for such workdays.

71. Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff and Class Members their owed spread of hours premiums, in violation of the NYLL. Defendants' awareness and willfulness is apparent because Defendants regularly scheduled Plaintiff and Class Members to work shifts lasting over ten (10) hours and failed to compensate them with any spread of hours premiums accordingly.

_Uniform Maintenance Expenses Claims_

72. At all relevant times, Defendants failed to reimburse Plaintiff's and Class Members' uniform expenses, in violation of the NYLL.

73. Defendants only provided a single uniform to Plaintiff and Class Members. Defendants' policy requires that uniforms be clean when worn; and if the uniforms are deemed as too unpresentable, employees are required to purchase more uniforms from Defendants. Despite paying Plaintiff and Class Members at the minimum wage or tip credit minimum wage, Defendants

failed to clean, or offer to clean their employees' uniforms and did not pay uniform maintenance costs. Plaintiff's and Class Members' uniforms were issued by Defendants for the express benefit of Defendants, and it was a condition of employment to wear them in a clean condition during each shift. Despite the above, Defendants failed to reimburse costs incurred in cleaning and maintaining the required uniforms.

74. Defendants knowingly and willfully operated their business with a policy of not reimbursing Plaintiff's and Class Members' uniform expenses, in violation of the NYLL.

*WTPA Claims*

75. At all relevant times, Defendants failed to provide accurate wage notices and wage statements to Plaintiff and Class Members, in violation of the Wage Theft Prevention Act ("WTPA")—incorporated into the NYLL—including, but not limited to, NYLL §§ 195(1) and 195(3).

76. At all relevant times, Defendants failed to provide Plaintiff and Class Members with the wage notices required at the time of hire and annually thereafter, including but not limited to wage notices reflecting Plaintiff's actual rates of pay, allowances claimed by Defendants (including any tip credit, meal credit, or uniform allowance), the regular pay day, and other information required under NYLL § 195(1).

77. At all relevant times, Defendants' wage statements (to the extent any were provided) failed to accurately reflect, among other things, the actual hours worked by Plaintiff and Class Members.

78. By failing to report all of Plaintiff's and Class Members' hours, Defendants were able to reduce the employee earnings, and Defendants' contribution to those earnings, that it later reported to the IRS through the employees' W-2 forms, as such information is derived from the

information on employees' wage statements. The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of benefits available to the employee—such as unemployment benefits and social security benefits—as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and Class Members were irreversibly injured with respect to their benefits (including social security benefits)—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

79. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

80. New York courts continue to find sufficient standing to support these claims. As one such court stated at summary judgment in *Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, *61 (S.D.N.Y. Feb. 23, 2026):

> Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that 'Defendants' violations impaired their ability to seek relief due to a lack of information.' More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue. (internal citations omitted).

81. Here, Defendants' conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez*. By failing to inform Plaintiff and Class Members of the actual hours that they worked, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements and notices to Plaintiff and Class Members, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked and the allowances actually owed, or (b) forthrightly acknowledge, by way of the wage statement, that the employees' wages did not correspond to the hours they actually worked or the allowances they were owed.

82. Defendants knowingly and willfully operated its business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

*Plaintiff's ESSTA Retaliation Claim*

83. At all relevant times, Defendants failed to provide paid safe and sick leave to Plaintiff and retaliated against Plaintiff for exercising his right to use sick time, in violation of the ESSTA.

84. On or about September 2, 2024, Plaintiff was sick and came in late to his scheduled shift at Amity Hall Uptown. Approximately thirty (30) minutes into his shift, Plaintiff was terminated by Defendants' Chef.

85. Under the ESSTA, an employee is entitled to use sick time for absence from work due to "such employee's mental or physical illness, injury or health condition or need for medical diagnosis, care or treatment of a mental or physical illness, injury or health condition or need for preventive medical care." N.Y.C. Admin. Code § 20-914(a)(1)(a). Plaintiff's illness on September 2, 2024 constituted a qualifying reason for the use of sick time under the ESSTA.

86. The ESSTA prohibits employers from taking any adverse action against an employee that penalizes an employee for, or is reasonably likely to deter an employee from, exercising or attempting to exercise rights under the ESSTA. N.Y.C. Admin. Code § 20-918(b). Adverse actions include, but are not limited to, "threats, intimidation, discipline, discharge, demotion, suspension, harassment, discrimination, reduction in hours or pay." N.Y.C. Admin. Code § 20-918(c). Under the ESSTA, "an employee need not explicitly refer to a provision of this chapter or implementing rules to be protected from an adverse action." N.Y.C. Admin. Code § 20-918(d).

87. Plaintiff's termination on September 2, 2024 constituted an adverse action taken in retaliation for Plaintiff's exercise of his right to use sick time under the ESSTA. A causal connection between Plaintiff's protected activity and Defendants' adverse action is established by the fact that Plaintiff was terminated on the same day he exercised his right to sick time, approximately thirty (30) minutes into his shift. Under the ESSTA, a violation is established when it is shown that a protected activity was a motivating factor for an adverse action, whether or not other factors motivated the adverse action. N.Y.C. Admin. Code § 20-918(g).

88. Defendants willfully violated the ESSTA when they terminated Plaintiff in retaliation for exercising his right to use sick time.

89. Plaintiff retained Lee Litigation Group, PLLC, to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

90. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

91. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

92. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

93. At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

94. At all relevant times, Defendants had a policy and practice that failed to pay proper overtime wages to Plaintiff and FLSA Collective Plaintiffs, due to an invalid tip credit.

95. At all relevant times, Defendants had a policy and practice of failing to aggregate all overtime hours worked by Plaintiff and FLSA Collective Plaintiffs across multiple locations in a pay period.

96. At all relevant times, Defendants had a policy and practice of improperly calculating the overtime rates for Plaintiff and FLSA Collective Plaintiffs.

97. At all relevant times, Defendants had a policy and practice of retaining tips earned by Plaintiff and FLSA Collective Plaintiffs.

98. At all relevant times, Defendants had a policy and practice of failing to compensate Plaintiff and FLSA Collective Plaintiffs for all hours worked, due to time-shaving.

99. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

100. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

101. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

102. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages and overtime due to an invalid tip credit, unpaid overtime due to failure to aggregate all hours worked, unpaid wages due to time-shaving, and unpaid gratuities due to tip retention, plus an equal amount as liquidated damages.

103. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

104. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

105. At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

106. At all relevant times, Defendants had a policy and practice of failing to compensate employees for spread of hours premiums, in direct violation of the New York Labor Law.

107. At all relevant times, Defendants had a policy and practice of failing to reimburse uniform maintenance costs incurred by Plaintiff and Class Members, in violation of the NYLL.

108. Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

109. Defendants willfully violated Plaintiff's and Multi-Location Subclass Members' rights by issuing separate paychecks from each Restaurant and failing to pay Plaintiff and Multi-Location Subclass Members the full overtime wages to which they were entitled.

110. Defendants willfully violated Plaintiff's and Multi-Location Subclass Members' rights by failing to compensate them for all hours worked, due to Defendants' policy of time-shaving.

111. Defendants willfully violated Plaintiff's and Tipped Subclass Members' rights by compensating them at the incorrect tip credit overtime rate.

112. Defendants willfully violated Plaintiff's and Tipped Subclass Members' rights by illegally retaining gratuities to which they were rightfully entitled.

113. Defendants willfully violated Plaintiff's and Tipped Subclass Members' rights by failing to pay them the lawful minimum wage for all hours worked due to an invalid tip credit. As factually described above, Defendants were not entitled to claim any tip credits from Plaintiff's and Tipped Subclass Members' wages under the NYLL.

114. Defendants willfully violated Plaintiff's and Tipped Subclass Members' rights by subjecting them to an improper policy and practice in which they were required to engage in non-tipped work for more than 20% of each of their workweeks.

115. Defendants failed to provide Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law.

116. Defendants failed to provide Plaintiff and Class Members with proper wage statements with every payment as required by New York Labor Law § 195(3).

117. Due to the Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid wages, due to improper tip credit, unpaid wages due to time-shaving, unpaid spread of hours premiums, unreimbursed costs for maintenance and purchase of uniforms, disgorgements of illegally retained gratuities, unpaid overtime premiums, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of this action, pursuant to New York Labor Law.

## COUNT III

## VIOLATION OF THE EARNED SAFE AND SICK TIME ACT

118. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

119. At all relevant times, Defendants employed five or more employees and are employers covered within the meaning of N.Y.C. Administrative Code § 20-913.

120. Defendants are required to give paid sick time to Plaintiff. The ESSTA provides that: "All employers that employ five or more employees, all employers of one or more domestic workers, and any employer of four or fewer employees that had a net income of one million dollars or more during the previous tax year, shall provide paid safe/sick time to their employees in

accordance with the provisions of this chapter. An employer shall pay an employee for paid safe/sick time at the employee's regular rate of pay at the time the paid safe/sick time is taken, provided that the rate of pay shall not be less than the highest applicable rate of pay to which the employee would be entitled pursuant to subdivision 1 of section 652 of the labor law, or any other applicable federal, state, or local law, rule, contract, or agreement. Such rate of pay shall be calculated without allowing for any tip credit or tip allowance set forth in any federal, state, or local law, rule, contract, or agreement." ESSTA § 20-913(a).

121. Defendants willfully violated Plaintiff's rights by terminating him in retaliation for exercising his right to use sick time, in violation of § 20-918 of the ESSTA. Under the ESSTA, no person shall take any adverse action against an employee that penalizes an employee for, or is reasonably likely to deter an employee from, exercising or attempting to exercise rights under the ESSTA. N.Y.C. Admin. Code § 20-918(b). Discharge is an adverse action expressly prohibited by the ESSTA. N.Y.C. Admin. Code § 20-918(c).

122. Due to Defendants' ESSTA violations, Plaintiff is entitled to recover from Defendants full compensation including wages and benefits lost, punitive damages, equitable relief including reinstatement, and attorneys' fees and costs, pursuant to N.Y.C. Admin. Code § 20-924(d).

123. Additionally, Plaintiff is individually entitled to recover from Defendants: statutory penalties due to ESSTA violations, pursuant to N.Y.C. Admin. Code § 20-924(e).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages, including overtime, due to an invalid tip credit policy, due under the FLSA and NYLL;

d. An award of unpaid overtime wages, due to failure to aggregate all hours worked across multiple locations, due under the FLSA and NYLL;

e. An award of unpaid wages, due to time-shaving, due under the FLSA and NYLL;

f. An award of unpaid overtime wages, due to improper calculation of overtime rates, due under the FLSA and NYLL;

g. An award of unpaid spread of hours premiums, due under the NYLL;

h. An award of unreimbursed uniform maintenance expenses, due under the NYLL;

i. An award of disgorgement of all improperly distributed tips, due under the FLSA and NYLL;

j. An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

k. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

l. Designation of this action as a class action pursuant to F.R.C.P. 23;

m. Designation of Plaintiff as Representative of the Class;

n. Designation of Plaintiff as Representative of the Tipped Subclass;

o. Designation of Plaintiff as Representative of the Multi-Location Subclass; and

p. An award of full compensation including wages and benefits lost, due to Defendants' retaliatory termination in violation of the ESSTA;

q. An award of statutory penalties due to Defendants' violation of the ESSTA;

r. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: June 26, 2026
New York, NY

Respectfully submitted,

By: */s/ C.K. Lee*
C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*